IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| DD&B CONSTRUCTION, INC., | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| vs. | § | 5-20-CV-00182-FB-RBF |
| | § | |
| THE HANOVER INSURANCE | § | |
| COMPANY, | § | |
| | § | |
| *Defendant*. | § | |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

**To the Honorable United States District Judge Fred Biery:**

This Report and Recommendation concerns the Motions for Summary Judgment filed by

Defendant/Third-Party Plaintiff the Hanover Insurance Company and Third-Party Defendant

PHG Stone Oak, LLC. *See* Dkt. Nos. 24 & 39. All pretrial matters were referred for resolution

pursuant to Rules CV-72 and 1 of Appendix C to the Local Rules for the United States District

Court for the Western District of Texas. *See* Dkt. No. 6. Authority to enter this recommendation

stems from 28 U.S.C. § 636(b)(1)(B).

Plaintiff DD&B Construction, Inc. sues Defendant (and Third-Party Plaintiff) Hanover,

seeking to recover under an insurance policy for remediation work DD&B performed on a

construction project insured by Hanover and owned by PHG. The undisputed summary judgment

evidence reflects that Hanover paid $195,000 for the remediation pursuant to a settlement

agreement between Hanover and DD&B. But Hanover didn't remit the funds directly to DD&B;

Hanover instead issued   payment directly to PHG, purportedly in reliance on PHG's

representation that it would in turn tender the funds to DD&B. Ultimately, PHG refused to tender

1

the funds, contending that they were incorporated into the settlement for a state-court dispute that PHG and DD&B separately settled. DD&B claims Hanover breached their settlement by tendering the funds to PHG instead of to DD&B directly. Hanover contends there is a consistent collateral agreement providing that the funds would be remitted to PHG on DD&B's half. Hanover also asserts third-party claims against PHG in connection with the alleged failure to forward the payments to DD&B.

As discussed further below, Hanover's summary judgment motion, Dkt. No. 34, should be **GRANTED**. In light of the foregoing and assuming the District Court adopts this recommendation, any dispute between Hanover and PHG is moot. To the extent Hanover nevertheless desires to pursue its third party claims against PHG, they should be dismissed for lack of standing. Accordingly, PHG's summary judgment motion, Dkt. No. 39, should be **DISMISSED AS MOOT**.

### Factual and Procedural Background

Third-Party Defendant PHG operates and invests in premium-branded extended-stay hotels, including the recently constructed Home 2 Suites by Hilton located in San Antonio, Texas. *See* 3rd Party Compl. ¶ 6 (Dkt. No. 17); PHG Answ. ¶ 6  (Dkt. No. 22) (admitting the allegations).[1]  Construction for the Home 2 Suites project lasted from October 2016 through

---

[1] Although unsworn pleadings don't constitute competent summary judgment evidence, *see Larry v. White*, 929 F.2d 206, 211 n. 12 (5th Cir. 1991), the parties don't dispute several basic factual allegations lodged in the pleadings and associated attachments as well as in DD&B's underlying state court lawsuit against PHG. These facts include the relationship among the parties, the work performed by DD&B on behalf of PHG, DD&B's filing of a lien against PHG, and the parties' execution of various settlement agreements. Indeed, in providing the factual background for this case, Hanover largely directs the Court to its Third Party Complaint, and neither PHG nor DD&B materially disputes these allegations. To the contrary, PHG and DD&B admit at various points that many of these asserted facts are true. Accordingly, the Court accepts as true the basic facts asserted in the parties' pleadings except where otherwise contradicted by competent summary judgment evidence. *See, e.g.*, *McCreary v. Richardson*, 738 F.3d 651, 659

October 2019. *See* 3rd Party Compl. ¶ 7; PHG Answ. ¶ 7. Plaintiff DD&B Construction served as the project's general contractor pursuant to an October 12, 2016, contract executed by DD&B and PHG. *See* C. Patel Aff. ¶ 2. (Dkt. No. 37-2); Standard Form of Agreement Between Owner and Contractor (Dkt. No. 34-5 at 7-119). Defendant/Third-Party Plaintiff Hanover provided PHG with Builder's Risk insurance during construction. *See* Dkt. No. 34-4.[2]

On July 4, 2018, the property suffered water damage unattributed to DD&B. *See* 3rd Party Compl. ¶ 9; DD&B Compl. 8; PHG Answ. ¶ 9; C. Patel Aff. ¶ 3. PHG filed a claim under the Hanover policy. *See* 3d Party Compl. ¶ 9; DD&B Compl. ¶ 8; PHG Answ. ¶ 9; C. Patel Aff. ¶ 3. While Hanover investigated the claim, PHG retained DD&B to oversee the repair and remediation work associated with the water damage. *See* 3d Party Compl. ¶ 10; C. Patel Aff. ¶ 3. After completing its remediation work, DD&B submitted a final invoice to Hanover in the amount of $386,463.97. *See* C. Patel Aff. ¶ 5.

PHG allegedly failed to pay DD&B for other work DD&B performed on the project. Accordingly, on April 2, 2019, PHG filed a lien on the property. *See* DD&B State Court Petition with attached lien, lien notice, and demand letter (Dkt. Nos. 17-2 and 17-3). On May 1, 2019— before Hanover resolved the still-pending insurance claim—DD&B sued PHG in state court for breach of contract and foreclosure of the lien. *See id.* In total, DD&B sought $1,409,642.40 in past-due compensation from PHG, including the amount invoiced for the remediation. *See id.* Hanover wasn't a party to the state court litigation between DD&B and PHG. Nevertheless, Hanover—in furtherance of its investigation and adjustment of PHG's remediation claims—

---

n.5 (5th Cir. 2013) ("This circuit has long noted that factual statements in the pleadings constitute binding judicial admissions . . . or at the very least adverse evidentiary admissions.") (citations omitted).

[2] The policy was initially effective October 14, 2016, through October 2014, 2017, but was subsequently renewed for several years up to and including January 31, 2019. *See* Dkt. No. 34-4 at 65-74.

agreed to tender $195,000 in full settlement of any claims asserted by DD&B arising out of the July 4, 2018, leak. *See* Release & Settlement Claim (Dkt. No. 34-2).

Hanover emailed a draft copy of the Release to DD&B, copying PHG. *See* Dkt. No. 34-6 at 4 (Wood Jun. 6, 2019 email).  Although PHG wasn't a party to the Release or participant in the negotiations, *see* Chatel Aff. ¶ 7, PHG advised both Hanover and DD&B that the money needed to be issued to PHG. Specifically, in an email dated June 6, 2019, Lee Shuman, Vice President of Construction and Design for PHG, advised Hanover and DD&B that:

> This payment [of  $195,000] will have to come to PHG. We are then required to send funds to our lender. Then we have to draw these funds and the lender must approve. They may require further back up to release these funds to DDB.

Dkt. No. 34-6 at 4 (Schuman Jun. 6, 2019 email). Neither Hanover nor DD&B immediately responded to PHG's email regarding the manner of payment. On June 17, 2019, however, Hanover confirmed that it "must issue payment to the owner [PHG] per the policy." Dkt. No. 37-3 at 15 (Wood Jun. 17, 2019 email). Hanover then requested that DD&B send the fully executed release, after which Hanover would "release the final payment to the insured on the policy" *i.e.*, PHG. *id.* Ultimately,  Chintan Patel, Vice President of DD&B, acquiesced and executed the Release on June 18, 2019. *See* Release & Settlement Claim; Chatel Aff. ¶ 8; Dkt. No. 34-7 (Wood-Chatel Jun. 17 to Jun. 19, 2019 emails). The Release provides in relevant part as follows:

> FOR THE SOLE CONSIDERATION OF One Hundred Ninety-Five Thousand Dollars ($195,000.00),  which is the final payment on the total agreed settlement of One Million three Hundred Seventy Three thousand Two Hundred Twenty Six Dollars and Twenty One Cents ($1,373,226.21),  we, DD&B Construction, INC. hereby release and forever discharge The Hanover Insurance Company and The Hanover Insurance Group, their adjusters, administrators, executors, successors, and assigns (hereinafter "The Released Parties") from any and all actions, causes of action, claims, demands, damages, costs, loss of service, expenses and compensation on account of or in any way growing out of any and all loss or damage to the jobsite for The Home2 Suites by Hilton project located at 1807 N Loop 1604 E San Antonio, TX 78259 ("jobsite") that occurred on or about July 4[th], 2018 (the "Incident") and hereby agree to release The Released Parties from all further claims or demands made by us including the cost or expense associated therein arising out of the loss sustained by us resulting from the Incident.

4

. . .

> It is expressly warranted that no promise or inducement has been offered except as herein set forth; that this release is executed without reliance upon any statement or representation of the person or parties released, or their representatives, concerning the nature and extent of the damages and/or legal liability therefor; that acceptance of the consideration set forth herein is in full accord and satisfaction of the claim resulting from the Incident.

Release & Settlement Claim. Notably, the Release doesn't address when or to whom Hanover would issue payment. But in an email dated June 20, 2019 from Jim Wood, Executive General Adjuster for Hanover, to Schuman of PHG and copying Patel from DD&B, Wood confirmed—pursuant to his earlier statements—that Hanover sent a check payable *to PHG*. Specifically, Wood explained:

> Per our agreement with DD&B, Hanover has issued payment in the amount of $195,301.81 as final payment for the direct repairs on the subject claim. The check is made payable to PHG Stone Oak, LLC and Trustmark National Bank. The check is being mailed to Peachtree Hotel Group Attn: Crystal King 3500 Lenox Road NE Suite 625 Atlanta, GA 30326-4232.

Dkt. No. 34-6 at 3 (Jun. 20, 2019 Wood email). DD&B didn't object to this method of payment. To the contrary, in response to Wood's email, Patel requested that *PHG* "make sure all the insurance fund[s] [are] sent to DD&B ASAP." *Id.* at 2-3 (Patel Jun. 20, 2019 email). PHG never forwarded the $195,000 it received from Hanover to DD&B. PHG instead withheld the $195,000, contending the funds were part of an overall August 19, 2019, private settlement of the state court litigation between PHG and DD&B that was memorialized in a document entitled, "Project Close-Out Agreement." Project Close-Out Agreement (Dkt. No. 34-3); Dkt. No. 34-6 at 2 (Schuman Jun. 20, 2019 email). DD&B, however, contends that the Project Close-Out Agreement only resolved the outstanding balance on the original construction contract—not the amount owed for the allegedly separately performed remediation work. *See* Patel Aff. ¶ 10. In support, DD&B points to the invoices attached as Exhibit A to the Project Close-Out Agreement,

none of which DD&B alleges makes any reference to the remediation work it separately submitted to Hanover for payment. *See id.*

On January 15, 2020, DD&B filed the instance action against Hanover—not PHG—in state court to recover the $386,463.97 associated with the remediation work it performed on the project. *See* DD&B Compl. (Dkt. No. 1-3). DD&B raised claims against Hanover for breach of contract and, in the alternative, quantum meruit. *See id.* Hanover removed the action to federal court, asserting diversity jurisdiction. *See* Dkt. No. 1. On July 14, 2020, Hanover filed a third-party complaint against PHG. *See* 3rd Party Compl. Essentially, Hanover claimed PHG's refusal to remit the $195,000 to DD&B resulted in DD&B instituting the instant action against Hanover. *See id.* Hanover raised third-party claims against PHG for breach of contract and conversion. Alternatively, and in the event Hanover couldn't prove a legal contract with PHG, Hanover brought a third-party claim for promissory estoppel. *See id.* Finally, Hanover sought a judgment declaring that "PHG is obligated and required to deliver the remediation payment of $195,000 to DD&B pursuant to its contractual obligation memorialized on June 6, 2019." *Id.*

Hanover and PHG now each move for summary judgment on the claims asserted against them. *See* Dkt. Nos. 24 & 39.

## Analysis

As discussed further below, Hanover is entitled to judgment as a matter of law on the breach of contract and quantum meruit claims brought against it by DD&B. Pursuant to a contemporaneous collateral agreement consistent with the parties' Release, DD&B agreed that Hanover would tender the funds at issue to PHG. And DD&B can't maintain a quantum meruit claim where it performed work on PHG's—not Hanover's—behalf. Assuming the District Court

adopts this recommendation, Hanover's third-party claims against PHG should be dismissed as moot or, alternatively, for lack of standing.

### A.    Hanover Is Entitled to Summary Judgment on Both of DD&B's Claims.[3]

       **1.**    *Hanover complied with a consistent collateral agreement on the delivery of the funds, negating DD&B's breach-of-contract claim***.** The undisputed summary judgment evidence reflects that both DD&B and Hanover agreed—at PHG's insistence—that Hanover would provide payment of the $195,000 in satisfaction of the Release to PHG and that PHG would then remit those funds to DD&B. *See* Wood, Patel, & Schuman email exchanges at Dkt. Nos. 37-6 to 37-7 & 37-3 at 13-15. Although such parol evidence is generally inadmissible where—as here—a contract is unambiguous, consistent collateral agreements provides an exception to that rule. "Under the [collateral agreement] exception, parol evidence can be used to demonstrate a prior or contemporaneous agreement that is both collateral to and consistent with a binding agreement, and that does not vary or contradict the agreement's express or implied terms or obligations." *ERI Consulting Eng'rs Inc. v. Swinnea*, 318 S.W.3d 867, 875 (Tex. 2010) (quotations omitted); *see also Hubacek v. Ennis State Bank*, 159 Tex. 166, 172, 317 S.W.2d 30, 32 (1958). For example:

> A and B in an integrated contract respectively promise to sell and to buy Blackacre for $3,000.00. A contemporaneous oral agreement between them that the price shall be paid partly by discharge of a judgment which B has against A is operative.

*Hubacek*, 317 S.W.2d at 33. Such is the case here.

---

[3] Even if Hanover wasn't entitled to summary judgment on both of DD&B's claims, exemplary damages aren't recoverable as a matter of law here. *See Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617, 618 (Tex. 1986) (claim for breach of contract can't support recovery of exemplary damages); *City of Houston v. Swinerton Builders, Inc.*, 233 S.W.3d 4, 10 n.7 (Tex. App.— Houston [1st Dist.] 2007, no pet.) (remedy in quantum meruit is actual damages).

The emails between DD&B, PHG, and Hanover reveal that Hanover and DD&B entered into a collateral agreement regarding Hanover's method of delivery for the remediation funds. This collateral agreement didn't vary or contradict the express terms of the Release—which, as mentioned, doesn't address the method of delivery for the funds. It is also the type of agreement "as might naturally be made as a separate agreement" by similarly situated parties. *Id.* at 32-33. DD&B and Hanover's contemporaneous agreement regarding the method of the funds' delivery is therefore enforceable, notwithstanding the Release's merger clause. *See id.*[4]

Because the uncontroverted summary judgment evidence reflects that Hanover fulfilled its obligation under the Release by delivering the funds to PHG on June 20, 2019, *see* Dkt. No. 34-6 at 3, Hanover is entitled to summary judgment on Hanover's breach-of-contract claim.

The fact that Hanover allegedly didn't provide separate consideration for the collateral agreement doesn't mandate a different result, as DD&B urges. *See Hubacek*, 317 S.W.2d at 33 ("Enforcement of such [collateral] agreements is contemplated even though there be no separate consideration."). Nor is it relevant that Hanover had previously tendered payment to DD&B, where the undisputed summary evidence reflects an unambiguous, consistent collateral agreement to tender the funds at issue to PHG. *See Frost Nat'l Bank v. L&F Distrib., Ltd*., 165 S.W.3d 310, 313 n.3 (Tex. 2005) (refusing to consider course of performance evidence when the plain language of the contract was clear); *Nat'l Union Ins. Co. v. CBI Indus., Inc*., 907 S.W.2d 517, 520 (Tex. 1995) (parole evidence isn't admissible to create an ambiguity). Finally, that DD&B didn't expressly consent in writing to the method of delivery is immaterial where Patel's conduct indicated DD&B's acceptance of the collateral agreement. *See Haws & Garrett Gen.*

---

[4] *See also Fish v. Tandy Corp*., 948 S.W.2d 886, 899 (Tex. App. —Fort Worth 1997), writ denied ("[A] subsequent integration will not supersede or invalidate a written agreement relating to the same subject matter if the agreement is such that might naturally be made as a separate agreement").

*Contractors, Inc. v. Gorbett Bros. Welding Co.*, 480 S.W.2d 607, 609 (Tex. 1972) (explaining that a  meeting of minds can be implied from and evidenced by "the acts and conduct of the parties").

> **2.** *Hanover is entitled summary judgment on DD&B's quantum meruit claim*. "Quantum meruit is an equitable remedy that is based upon the promise implied by law to pay for beneficial services rendered and knowingly accepted." *Hill v. Shamoun & Norman, LLP*, 544 S.W.3d 724, 732 (Tex. 2018) (quotations omitted). In other words, quantum meruit is an equitable doctrine designed to "prevent a party from being unjustly enriched by retaining the benefits of the performance without paying anything in return." *Id.* (quotations and ellipsis omitted). To recover under a quantum-meruit claim, a claimant must prove that: (1) valuable services were rendered or materials furnished; (2) for the person sought to be charged; (3) those services and materials were accepted by the person sought to be charged, and were used and enjoyed by him; and (4) the person sought to be charged was reasonably notified that the plaintiff performing such services or furnishing such materials was expecting to be paid by the person sought to be charged." *Id.* "A party generally cannot recover under a quantum-meruit claim when there is a valid contract covering the services or materials furnished." *Id.*

DD&B's quantum meruit claim fails because the uncontroverted evidence reflects DD&B performed the remediation work for PHG's—not Hanover's—benefit. DD&B's briefing fails to meaningfully respond to Hanover's argument on this issue. The Court therefore need not address Hanover's alternative argument that the general contract between PHG and DD&B covered the remediation work. Accordingly, summary judgment in favor of Hanover on DD&B's quantum meruit claim should be granted.

**B.**    **Hanover's Claims Against PHG Are Moot or, Alternatively, Fail for Lack of Standing**.

In the event the District Court accepts this recommendation and grants judgment as a matter of law on all claims asserted by DD&B against Hanover, the dispute between Hanover and PHG becomes moot. Hanover appears to recognize this in its response to PHG's summary judgment motion. *See* Dkt. No. 40 ("[U]ntil DD&B's claims against Hanover are resolved — PHG is a necessary party to this suit. For this reason, PHG's Motion [for Summary Judgment] should either be (i) denied or (ii) granted only after Hanover's Motion for Summary Judgment ("Hanover's Motion") is also granted").

Nevertheless, a review of Hanover's Third Party Complaint suggests that Hanover raises its third-party claims against PHG independent of the claims DD&B asserts against Hanover. For example, as a remedy for its breach of contract and alternative promissory estoppel claims, Hanover "seeks monetary damages and specific performance" along with attorneys' fees in connection with the prosecution of this action. 3rd Party Compl. ¶¶ 24; 26, 33-34. Hanover similarly requests attorneys' fees in connection with its conversion claim. *See id.* ¶ 29. Finally, Hanover seeks a judgment declaring that: "PHG is obligated and required to deliver the remediation payment of $195,000 to DD&B pursuant to its contractual obligation memorialized on June 6, 2019 [in the DD&B-Hanover-PHG email exchanges]." *Id.* ¶ 20.

To the extent Hanover still desires to pursue its third-party claims against PHG, Hanover hasn't pleaded—let alone demonstrated—its standing to challenge PHG's failure to deliver the funds to *DD&B*. *See Hotze v. Burwell*, 784 F.3d 984, 993 (5th Cir. 2015) ("[I]f the plaintiff does not carry his burden "clearly to allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute, then dismissal for lack of standing is appropriate.") (quotations omitted). Similarly, in light of the above recommendation, there's no justiciable controversy

between Hanover and PHG sufficient to give rise to a claim for a declaratory judgment. *See Frye v. Anadarko Petroleum Corp.*, 953 F.3d 285, 294 (5th Cir. 2019) (a plaintiff seeking a declaratory judgment bears the burden of pleading facts demonstrating the existence of a justiciable controversy). Accordingly, to the extent the District Court adopts this Report and Recommendation and grants summary judgment in Hanover's favor on DD&B's claims, all claims asserted by Hanover against PHG should be dismissed either as moot or for lack of standing.  The Court need not address the merits of PHG's summary judgment motion.

### Conclusion and Recommendation

For the reasons discussed above, Hanover's summary judgment motion, Dkt. No. 34, should be **GRANTED** and PHG's summary judgment motion, Dkt. No. 39, should be **DISMISSED AS MOOT**. Accordingly, all claims asserted by DD&B against Hanover should be dismissed with prejudice. All third party claims asserted by Hanover against PHG should be dismissed without prejudice.

Having considered and acted upon all matters for which the above-entitled and numbered case was referred, it is **ORDERED** that the above-entitled and numbered case is **RETURNED** to the District Court for all purposes.

### Instructions for Service and Notice of Right to Object/Appeal

The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy by certified mail, return receipt requested, to those not registered. Written objections to this report and recommendation must be filed **within fourteen (14) days** after being served with a copy of same, unless this time period is modified by the district court. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The objecting party

shall file the objections with the clerk of the court, and serve the objections on all other parties. A party filing objections must specifically identify those findings, conclusions, or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusory, or general objections. A party's failure to file written objections to the proposed findings, conclusions, and recommendations contained in this report shall bar the party from a *de novo* determination by the district court. *Thomas v. Arn*, 474 U.S. 140, 149-52 (1985); *Acuña v. Brown & Root, Inc.,* 200 F.3d 335, 340 (5th Cir. 2000). Additionally, failure to timely file written objections to the proposed findings, conclusions, and recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

**IT IS SO ORDERED**.

SIGNED this 2nd day of February, 2022.

RICHARD B. FARRER
UNITED STATES MAGISTRATE JUDGE